### 39915. BETHEA v. THE STATE.

WELTNER, Justice.

Johnny Bethea was convicted in Chatham County of felony murder and sentenced to life imprisonment. The victim, Keyvian Clowers, was the twenty-two-month-old son of Patricia Clowers, with whom Bethea was living at the time of the child's death.

1. Medical testimony indicated that the child had sustained injuries from blows to his head and abdomen which had been inflicted over a period of several days. The immediate cause of death was a

blow to the stomach which ruptured his liver, causing bleeding into the abdominal cavity.

The investigating officer testified that he responded to a telephone call from Bethea indicating that the child was sick. When the officer arrived at Mrs. Clowers' apartment, Bethea motioned him upstairs, where the officer found the child dressed in a pullover shirt and diaper, lying face down in a crib. Although no vital signs were apparent, the officer rushed the child to the hospital by police car while Bethea, as instructed, attempted artificial respiration. An emergency medical team was assembled at the hospital to administer treatment.

Detective Rawls testified that before he was arrested, Bethea told her that he and some friends were watching television in Patricia Clowers' apartment; that he and a friend looked in on the child and found him sleeping in his crib; that Mrs. Clowers returned to her apartment and then left; Bethea later discovered that the child was cold, and called the police.

Bethea was in the United States Army at the time of the death. His commanding officer, Captain Barnard, testified that at Bethea's request he met with Bethea in the county jail approximately two and a half weeks after the death. There, Bethea said he was at home in Patricia Clowers' apartment watching a football game and drinking. The child was upstairs crying; Bethea struck him to keep him from crying. He started to bring him downstairs, but the child continued crying, and Bethea struck the child again, knocking him down the steps. Although he knew the child was seriously injured, he did not call the police immediately because he was fearful that the death would be viewed as intentional and not accidental, as he had been drinking at the time. Two hours later he called the police.

2. The evidence was sufficient to permit the jury to find beyond a reasonable doubt each element of the offense of felony murder (homicide committed during the commission of the felony of cruelty to children). Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Bethea contends that his character was put into evidence unlawfully by the pathologist's testimony concerning certain injuries to the head and torso of the child which were not contributory to his death.

The pathologist was entitled to describe the condition of the child's body as observed during his examination, and, at the same time, to express his expert opinion that the laceration of the liver was the sole cause of death. OCGA § 24-9-67 (Code Ann. § 38-1710). His testimony was not inadmissible because it might possibly give rise to inferences adverse to Bethea. Further, there was no motion for a

mistrial. *Hughes v. State,* 239 Ga. 393, 396 (2) (236 SE2d 829) (1977).

4. We find no abuse of discretion on the part of the trial court in overruling Bethea's objection to the state's closing argument that the jurors should "try to eliminate in [their] minds anything except this case and the evidence before [them]." *Jordan v. State,* 247 Ga. 328, 348 (11) (276 SE2d 224) (1981). Even if this statement might suggest that the jurors should disregard Captain Barnard's testimony that Bethea was a good soldier, it is plainly within the bounds of proper argument, as either party is free to suggest to jurors that they place heavy weight, or that they disregard totally, any aspect of the evidence. Indeed, that is the very substance of argument.

5. Bethea contends that his statements to Detective Rawls were taken in violation of Edwards v. Arizona, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), because they were given while he was in custody and after his attorney had insisted that the police not question him.

At the Jackson-Denno hearing, Detective Rawls acknowledged that, at the preliminary hearing, she said that she took Bethea's statement *after* his arrest. She then explained that her prior testimony was in error, and that Bethea's statements in fact were taken during the preliminary investigation and *before* Bethea's arrest. The trial court admitted the statements, and we accept his factual determination, as supported by the evidence. *Cox v. State,* 248 Ga. 713 (1) (285 SE2d 687) (1982).

6. Bethea contends that Detective Rawls improperly commented on his right to remain silent by testifying that he refused to give a written statement, and to sign her written memorandum of his oral statement. Bethea signed a written waiver and made an oral statement, thereby waiving his right to remain silent. Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Even were her testimony a "comment," this contention is inapposite to the circumstances of the case.

7. After arrest, Bethea asked his platoon sergeant to request that his captain come to see him in jail. Captain Barnard thereafter agreed to help Bethea, provided he tell him the truth.

Three months later, Captain Barnard read in the newspaper that charges against Bethea had been dropped, and, for the first time, disclosed the substance of his conversation with Bethea.

Bethea contends that his statement to Captain Barnard should have been excluded for want of Miranda warnings. Massiah v. United States, 377 U.S. 201 (84 SC 1199, 12 LE2d 246) (1964); United States v. Henry, 447 U. S. 264 (100 SC 2183, 65 LE2d 115) (1980).

The evidence before the trial court was sufficient to support a finding that Captain Barnard was not an agent of the state within the meaning of the Massiah and Henry decisions. Miranda warnings are

not a prerequisite to the admission of statements made by a defendant to persons other than law enforcement officers or their agents. *Harper v. State,* 249 Ga. 519, 528 (292 SE2d 389) (1982); *Berryhill v. State,* 249 Ga. 442, 449 (10) (291 SE2d 685) (1982).

8. The court advised the jury that it would consider five crimes, two of which would be murder. "Regular statutory murder, which I'll give you. What is called a felony murder which would be the second one." After charging on malice murder, the court stated: "The second count of the indictment sets out the felony murder rule theory that the State is relying upon." This instruction was not a comment upon the evidence. OCGA § 17-8-55 (Code Ann. § 81-1104).

9. Before Bethea took the stand, defense counsel sought a ruling excluding any cross-examination by the state of the defendant concerning the previous injuries to the child. A discussion of the law regarding the proper limits of cross-examination then transpired between the court and counsel. Thereafter, defense counsel decided not to put Bethea on the stand. Bethea contends on appeal that the failure of the trial court to sustain his motion denied him an opportunity to testify, and denied him effective assistance of counsel. We find no abuse of discretion in the postponing of evidentiary rulings until evidence be tendered and met by objection. The court's failure to rule on the motion did not prevent Bethea from testifying on his own behalf, nor did it deny to him effective assistance of counsel.

10. Bethea objected to the testimony of the pathologist, based upon the autopsy, that the laceration of the child's liver was caused by a blow to his abdomen, and that it could not have been the result of a fall. He contends that the pathologist was expressing an expert opinion based upon facts not in the record, and was testifying as to the ultimate issue. Captain Barnard's testimony, later introduced, included Bethea's statement that he had struck the child and that the child fell down the steps. "[W]here the trial court allows the question, as was done here, the later introduction of the evidence on which the hypothetical question is based cures the error." *Vaughn v. State,* 249 Ga. 803, 805 (294 SE2d 504) (1982). Cause of death is, of course, a question for the jury. However, "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." *Smith v. State,* 247 Ga. 612, 619 (277 SE2d 678) (1981). Clearly, the medical circumstances of the child's death were beyond that ken.

11. The remaining enumerations of error, including objections to the charge, are without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 7, 1983 —
REHEARING DENIED JULY 22, 1983.

*Calhoun, Hubbard, Riddle & Cox, William O. Cox, G. Terry Jackson,* for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.