45786. WELLBORN v. THE STATE.
(372 SE2d 220)

MARSHALL, Chief Justice.

Rance Langley Wellborn appeals his conviction of the malice

murder of Larry Burmeister, for which he was sentenced to life imprisonment.[1] We affirm.

On May 14, 1986, the nude body of the victim — mutilated from numerous lacerations and stab wounds — was found on the floor next to the bed in his bedroom. Blood covered the body, the bedspread in which it was partially wrapped, the carpet underneath, and the walls and floor. There was evidence that the victim was homosexual, that Wellborn was bi-sexual, and that both of them had been seen in the same gay "cruise bar" in Midtown Atlanta on several occasions. Wellborn admitted having fled rapidly from the victim's house at the time of the homicide (mid-day May 13), but claimed that an unidentified assailant had attacked him in the carport before Wellborn discovered the victim's body. The evidence did not support this contention. There was evidence that Wellborn was unclothed during the attack on the victim, and the victim's mouth contained partially intact spermatozoa. The victim's injuries were of the type found in homicides in which there is an emotional link or bond between the victim and the assailant.

1. Prior to trial, the defense filed a motion pursuant to OCGA § 17-7-211 for production of scientific reports. Copies of all written reports were supplied by the state prior to trial. The district attorney's office determined that a throw rug from the victim's hallway was not significant to the case, therefore it was not originally submitted to the state crime lab for testing. During cross-examination in the trial, defense counsel attempted to create the impression that bloodstains on the rug might have belonged to Wellborn, thereby supporting his defense. The rug was admitted in evidence without objection. Having anticipated at the commencement of the trial that the rug might become important, the district attorney's office had it tested by the crime lab, which testing began two days after the commencement of the trial. Wellborn objects to the admission of expert testimony of the results of this test on the morning of the completion of the test (no written report having been obtained at that time), on the ground that he had not been furnished a copy of the report 10 days prior to trial pursuant to OCGA § 17-7-211.

"OCGA § 17-7-211 attaches only when there is a writing. *Law v. State*, 251 Ga. 525 (307 SE2d 904) (1983)." *Faircloth v. State*, 253 Ga. 67, 68 (2) (316 SE2d 457) (1984). There was no writing in existence at the time the state furnished copies of other reports as re-

---

[1] The crime was committed on May 13, 1986. Wellborn was convicted and sentenced on September 17, 1986. A motion for new trial was filed on October 1, 1986, and denied on March 9, 1988. The transcript of evidence was filed on April 15, 1987. The notice of appeal was filed on April 6, 1988. The record was docketed in this Court on May 31, 1988, and the case was argued on September 12, 1988.

quired by OCGA § 17-7-211. The statute does not prohibit the prosecution from introducing evidence of scientific tests performed immediately prior to or during the trial absent a showing that the prosecution attempted to circumvent the discovery process. *Carey v. State*, 257 Ga. 134 (3) (356 SE2d 507) (1987) and cit.; *Perry v. State*, 255 Ga. 490 (3) (339 SE2d 922) (1986). Here, the appellant had not sought expert analysis of the exhibit prior to trial; the testimony of the test results was introduced as rebuttal; the prosecuting attorney furnished the test results as soon as they became available; and the defense did not request a recess or continuance (*Carey v. State*, supra, (3)). Under these circumstances, we find no error.

2. Over objection that it impermissibly placed his character into issue, the state was allowed to introduce evidence of Wellborn's bisexuality. In view of the evidence that the victim was a homosexual and considering that evidence of homosexuality related to the facts of the murder, this evidence was admissible to show intent, motive, plan, scheme and bent of mind. *Williams v. State*, 250 Ga. 463, 466 (298 SE2d 492) (1983); *Rini v. State*, 236 Ga. 715, 716 (2) (225 SE2d 234) (1976). See also *Jones v. State*, 172 Ga. App. 347 (2) (323 SE2d 174) (1984); *Gunter v. State*, 163 Ga. App. 824 (2) (296 SE2d 622) (1982); *Felker v. State*, 144 Ga. App. 458 (2) (241 SE2d 576) (1978).

Wellborn objected to allowing such evidence to be admitted in the form of a conclusion by an expert witness who was a forensic *pathologist*, whereas he contends that this was mere speculation based on forensic *psychology*, outside the realm of the witness' qualifications. Unlike the case of *Sanders v. State*, 251 Ga. 70 (3) (303 SE2d 13) (1983), the objected-to evidence (here, as to homosexual tendencies) was already in evidence. The expert witness' opinion here was supported by the evidence; was within the scope of his field according to his testimony; and was a conclusion which the jurors ordinarily could not draw themselves. No timely objection was made as to lack of general acceptance of the witness' opinion, thus this was waived. Such opinions based on the nature of the victim's injuries are generally permitted. *Buie v. State*, 254 Ga. 167 (4) (326 SE2d 458) (1985); *Prince v. State*, 252 Ga. 82 (2) (311 SE2d 433) (1984); *Bethea v. State*, 251 Ga. 328 (10) (304 SE2d 713) (1983); *Allison v. State*, 256 Ga. 851 (5) (353 SE2d 805) (1987).

Enumerated errors 2 and 4 are without merit.

3. Wellborn contends that a mistrial should have been granted because a state's expert witness from the state crime lab testified that she had *visually* examined his shirts for bloodstains, whereas she stated out of the jury's presence that she had *chemically* analyzed them. His contention is that this was deceptive and improper use of perjured testimony, to make it appear that the absence of bloodstains was so obvious that chemical testing was unnecessary.

The state complied with OCGA § 17-7-211 by its pretrial furnishing of copies of each *written* scientific report it had received. (See Div. 1, above.) The witness stated that she does not always report such negative results, and the results were admissible in their entirety because no written report was made. *Williams v. State*, 251 Ga. 749 (3a) (312 SE2d 40) (1983); *Law v. State*, 251 Ga. 525, supra, (2). The trial court went further by excluding any mention of chemical tests. There was no deliberate circumvention of the discovery process by reliance on a lack of a written scientific report (see Justice Smith's dissent in *Perry v. State*, 255 Ga. 490, supra at 494 (1)), because the test results were negative; the evidence was inconclusive; and the test results were cumulative.

Wellborn also contends that the prosecutor impermissibly commented on the expert witness' testimony in the state's closing argument. However, the argument was properly based on the evidence at trial. *Owens v. State*, 120 Ga. 209 (3) (47 SE 545) (1904). Moreover, the appellant's failure to make a contemporaneous objection to the argument forecloses his raising the issue on appeal. *Jones v. State*, 258 Ga. 249 (2) (368 SE2d 313) (1988); *Williams v. State*, 251 Ga. 749, supra, 801 (14) and cits.

4. Reviewing the record, we find that the evidence is sufficient to support the conviction under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs specially.*

SMITH, Justice, concurring specially.

I concur in the judgment; however, I do not agree that OCGA § 17-7-211 is applicable.

The introduction of the rug into evidence by the state was a direct result of the defendant's trial tactics. The state had determined that the few drops of blood on the rug were not significant given the fact that there was blood virtually all over the room. The rug was not sent to the state lab for analysis. When the defendant took the position during the course of the trial that the blood on the rug would substantiate his defense claim, the state was forced into introducing the rug in rebuttal to negate the claim. OCGA § 17-7-211 should not apply when the defendant's trial tactics force the state to seek scientific reports that they would not have otherwise sought.

DECIDED SEPTEMBER 28, 1988 —
RECONSIDERATION DENIED OCTOBER 19, 1988.

*L. David Wolfe*, for appellant.
*Robert E. Wilson*, District Attorney, *Robert E. Statham III*, As-

*sistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General, for appellee.*