A94A0376. CORNELIUS v. THE STATE.
(445 SE2d 800)

McMURRAY, Presiding Judge.

Defendant was charged with child molestation, enticing a child for immoral purposes, kidnapping with bodily injury and interstate interference with child custody for acts committed against the victim, a minor female child. The evidence adduced at the jury trial reveals the following: Defendant met the victim and the victim's family when he was 21 years of age. Over the next five years, defendant developed an attraction for the victim, cultivated a close relationship with her family and gave the victim expensive gifts. By the time the victim was 11 years of age, defendant (then 26 years of age) openly displayed intimate physical affection with the child. In October 1991, a neighbor observed defendant touching the victim's mouth with his mouth and tongue, i.e., "french kissing," and reported the incident to the Douglas County Department of Family & Children Services ("DFACS"). During an investigation, defendant admitted to investigators from DFACS and the Douglas County Police Department that he had "french kissed" the victim and stated that he and the child "loved each other and that they just held each other occasionally, a loving kiss between each other, that sort of thing." When questioned about his attraction to young girls, defendant stated, "I know those feelings aren't right; I know they're not right."

The victim was medically examined pursuant to the DFACS investigation and there were no physical signs of sexual activity in the child's private area. Nonetheless, DFACS directed that the victim have no further contact with defendant and the DFACS investigation resulted in a charge (via accusation) against defendant for simple battery. However, in defiance of the DFACS directive for the victim not to contact defendant and while the simple battery charge remained pending, defendant contacted the victim and encouraged her to resist parental authority and discipline. Specifically, defendant told the vic-

tim that her parents were "mean to [her], because [she] had to take care of [her] sisters and brother." Defendant later told the victim that "if [she] wanted to leave [home, she] could," but not to tell her mother and stepfather "[b]ecause they would try to stop us." The victim agreed and defendant began marshalling his financial resources.[1]

At 11:30 p.m. on February 4, 1992, defendant picked up the victim (then 12 years of age) outside her home and drove her to Cartersville, Georgia, where he acquired a motel room and had intercourse with the victim. Thereafter, defendant drove the victim to a Tennessee lodge and kept her there for several weeks. During this period, defendant frequently engaged the victim in sexual intercourse. The child did not resist, but she "didn't feel that [she] could say no." Defendant later fled from Tennessee because he feared apprehension by federal law enforcement authorities. Defendant then drove the victim through several states, including Texas, Nevada and California.

During the ordeal, the victim cried because she was homesick. She wanted to call home but was afraid to use the telephone in defendant's presence. When the victim attempted to call home, she could not figure out how to place the call. Nearly two months after defendant left Georgia, he was apprehended in California with the victim. However, before defendant was taken into custody, he instructed the victim "not to tell [the law enforcement officers] that [they] had had sex and that [she] didn't want to go back home to my mom."

The jury found defendant guilty of all charges. This appeal followed the denial of his motion for new trial. *Held*:

1. In his first enumeration, defendant asserts the general grounds, arguing that he cannot be guilty of kidnapping with bodily injury because the victim is his common-law wife.

Generally, a 12-year-old child is not competent to enter into a valid marriage contract without the consent of her parent or guardian. OCGA § 19-3-2 (2). See also *Handley v. State*, 115 Ga. 584, 585 (41 SE 992). Compare *Cochran v. State*, 91 Ga. 763 (18 SE 16). In the case sub judice, there is no evidence that the victim's mother consented to any common-law marriage. Further, the mother denied that she knew or approved of defendant's plan to leave Georgia with her minor daughter and she reported her daughter's disappearance to the police. Nonetheless, defendant argues that a valid marriage existed

---

[1] In planning the abduction, defendant sold or pawned many of his possessions, drew over $4,400 from his employer's checking account, acquired an automobile that was not registered in his name, and advanced three months rent for a secluded chalet in Pigeon Forge, Tennessee. He informed the landlord that his name was "Prado" and that he needed temporary lodging for himself and his father because their house was under repair due to fire damage.

under California law. This argument is without merit. The law of California on the subject of common-law marriage was not pleaded and proved in conformity with the requirements of OCGA § 24-7-24. In the absence of such properly authenticated evidence, the laws of other states are presumed to be the same as those in effect in Georgia. *Craighead v. Davis*, 162 Ga. App. 145, 146 (2) (290 SE2d 358).

Next, defendant contends the evidence was insufficient to support the allegation that he committed child molestation by kissing the victim with intent to arouse his sexual desires.

Whether an act is committed with the requisite criminal intent is a question for the jury "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. See *Blanton v. State*, 191 Ga. App. 454 (1), 455 (382 SE2d 133). In the case sub judice, it is undisputed that defendant touched the mouth of the 11-year-old victim with his mouth and tongue when defendant was 26 years of age. Further, the victim testified that the "french kissing" felt "weird." There was also testimony that defendant acted on his sexual impulses with a 14-year-old girl three years before he "french kissed" this victim. This evidence is sufficient to authorize the jury's finding that defendant is guilty, beyond a reasonable doubt, of child molestation as alleged in the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Branam v. State*, 204 Ga. App. 205, 206 (419 SE2d 86). In other words, it was for the jury to decide whether it was immoral or indecent for a 26-year-old man to "french kiss" an 11-year-old child. See *McCord v. State*, 248 Ga. 765, 766 (285 SE2d 724).

Last, defendant contends that venue was improper in Douglas County, Georgia, arguing that the crimes occurred outside the State of Georgia. Venue for the prosecution of kidnapping with bodily injury lies in the county where the victim was seized, even though the bodily injury may have been inflicted in a different county. *Potts v. State*, 261 Ga. 716, 720 (2) (410 SE2d 89). Likewise, venue for the prosecution of enticing a child for immoral purposes lies in the county where the child was first enticed. OCGA § 17-2-2 (a). Venue for the prosecution of interstate interference with child custody is proper in the Georgia county where the child is enticed away from the lawful custodian. See OCGA §§ 17-2-1 (b) (1); 17-2-2 (a). Consequently, since the evidence showed that defendant initiated each of the crimes charged in Douglas County, Georgia, prosecution of defendant for the crimes alleged in the indictment was proper in Douglas County, Georgia.

2. In his second enumeration, defendant contends the trial court erred in failing to order a mental evaluation of him. He argues that the "bizarre" circumstances of trial demanded the court to stay the

proceedings and make inquiry into his mental condition.

In Georgia, the trial court may exercise its inherent discretionary authority "to order a psychiatric examination, but the refusal to do so will not be reversed unless it is shown that the want of an examination would infringe upon the defendant's right to a fair trial as guaranteed by the Georgia Constitution." *Williams v. Newsome*, 254 Ga. 714, 716 (334 SE2d 171). "However, in addition to the common law and statutory rights of a defendant not to be tried while incompetent, the accused also has a constitutional right to not be put on trial while incompetent and procedural due process requires the trial court to afford the accused an adequate hearing on the issue of competency. *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966)." *Baker v. State*, 250 Ga. 187, 188 (1), 189 (297 SE2d 9). "[T]he actual issue of present incompetence must be addressed if there is evidence of incompetence which manifests itself during the proceedings." *Baker v. State*, 250 Ga. 187, 188 (1), 191, supra. The focus of this inquiry is "whether the defendant at the time of trial is capable of understanding the nature and object of the proceedings against him and is capable of assisting" with his defense. *Brooks v. State*, 247 Ga. 744, 745 (279 SE2d 649).

In the case sub judice, the "bizarre" circumstances of defendant's trial were that defendant's stepfather, dissatisfied with trial counsel, threatened the attorney over the telephone. The attorney brought this matter to the attention of the trial court. After consultation, defendant and his attorney both agreed that the attorney would continue to represent him. Nevertheless, the next day, defendant released his retained counsel, citing his belief that he could best represent his own interests. Defendant stated that he did not wish to be represented by a public defender. The State's attorney then examined defendant as to his education and background and the trial court informed defendant of the requirement that he abide by the rules of procedure and evidence. Defendant indicated that he was aware that the minimum sentence for kidnapping with bodily harm was life and the State's attorney asked defendant, "do you understand that there are often serious risks to proceeding through a trial without a lawyer?" Defendant responded, "Yeah — well, there are serious risks for proceeding through trial with a lawyer." Whenever defendant's competence was put in issue, he defended himself and his abilities. The record also indicates that defendant was alert, capable of conducting his own defense and cognizant of the nature and object of the proceedings against him, including the dangers of proceeding without counsel. Under these circumstances, we cannot say the trial court erred in failing, sua sponte, to halt the trial and inquire into defendant's mental competence to stand trial. *Meders v. State*, 260 Ga. 49, 50 (1), 51 (1a) (389 SE2d 320).

3. Defendant contends the trial court expressed an opinion as to his guilt in violation of OCGA § 17-8-57 by using the term, "perpetrator," in a charge given in response to questions from the jury.

"The present rule is that '(t)he question of whether ([OCGA] § 17-8-57) has been violated is not reached unless an objection or motion for mistrial is made.' *State v. Griffin*, 240 Ga. 470 (241 SE2d 230) (1978). Accord *Ford v. State*, 255 Ga. 81 (2) (335 SE2d 567) (1985)." *Walker v. State*, 258 Ga. 443, 444 (3a) (370 SE2d 149). See also *Pulliam v. State*, 196 Ga. 782, 789 (6) (28 SE2d 139). In the case sub judice, defendant did not object or move for a mistrial when the trial court used the term, "perpetrator." Consequently, defendant failed to preserve for appellate review any alleged violation of OCGA § 17-8-57. *Brown v. State*, 150 Ga. App. 289, 290-291 (257 SE2d 359).

4. Defendant contends the trial court erred in failing to provide him with a court-appointed attorney after defendant discharged (during the fourth day of trial) the attorney retained to represent him at trial. Defendant argues that he was not advised of his right to a court-appointed attorney and that his decision to proceed pro se was not knowing and voluntary. This contention is without merit.

" '(T)he constitutional guarantees of the benefit of counsel . . . may be waived by action or declaration. (Cits.)' *Bradley v. State*, 135 Ga. App. 865, 866 (1) (219 SE2d 451)." *Phipps v. State*, 200 Ga. App. 18, 19 (406 SE2d 493). "[A] layperson does not have the right to represent himself and also be represented by an attorney. . . ." *Seagraves v. State*, 259 Ga. 36, 39 (376 SE2d 670). "[A] strict standard must be applied to waiver of counsel whether at trial or in pretrial proceedings and [a] constitutional waiver requires more than a comprehension of rights. There must be a relinquishment of rights." *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49).

In the case sub judice, the record reflects that, on the third day of trial, defendant had a conflict with his retained attorney over the conduct of the defense. The following then transpired in the trial court's chambers: 'THE DEFENDANT: Your Honor, if in fact [my retained attorney] and I can't come to an understanding, . . . I am willing to defend myself. . . . Am I allowed like a Public Defender [to assist] me when I am in the — or is it just total on my own? THE COURT: It's either you defend yourself or you don't defend yourself. THE DEFENDANT: Okay." The trial court and defendant then discussed certain difficulties defendant may encounter in conducting his own defense. Defendant conferred with his attorney and defendant agreed that his attorney would continue to conduct the defense. However, the next morning, defendant discharged his retained attorney and informed the trial court that he intended to defend himself. Defendant stated the following: "I don't have money for other counsel. To be honest with you, I don't — I feel like I probably could defend myself

as better — as good, if not better, than any public defender because I don't have a lot of faith in that system; and I talked to [my retained attorney] about this last night. I asked him his opinion." The attorney informed the trial court that he had warned defendant that he would be at a disadvantage trying to represent himself. When the State's attorney examined defendant as to his background, defendant stated that he had an annual income of $25,000 from selling insurance and that he completed the "[e]leventh grade with a GED." Further, the record indicates that defendant was aware that the penalty for kidnapping with bodily injury was a mandatory life sentence. Defendant's circumstances were summarized: "[STATE'S ATTORNEY]: So, if I've heard you correctly then, you do not want [the retained attorney] to represent you, you do not want a public defender and you do not want a delay? THE DEFENDANT: Right, but I am asking for notes [the retained lawyer made during trial]." The trial court then informed defendant that he would "have to follow all the rules of evidence . . ." and that the court would be unable to assist him in the defense. Under these circumstances, we find "that the trial court, fulfilling its important responsibility in this area, [made certain that defendant was] repeatedly apprised . . . of the dangers to a layman in conducting his own defense. See *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981)." *Staples v. State*, 209 Ga. App. 802, 803 (3), 804 (434 SE2d 757). "We find no error in the trial court's determination that [defendant] waived his right to appointed counsel and that he voluntarily and intelligently elected to proceed pro se after being fully apprised of the possible consequences. *Durham v. State*, 185 Ga. App. 163, 164 (1) (363 SE2d 607) (1987). Compare *Kirkland v. State*, 202 Ga. App. 356 (1) (414 SE2d 502) (1991) (relinquishment of a right to counsel cannot be inferred from a silent record)." *Staples v. State*, 209 Ga. App. 802, 803 (3), 804, supra.

5. In his fifth enumeration, defendant contends the trial court erred in admitting evidence of similar transactions without first making a determination as in *Williams v. State*, 261 Ga. 640 (409 SE2d 649).

"In *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991)[, the Supreme Court] held that in order for independent act evidence to be admissible it must be shown that the evidence is introduced for an appropriate purpose, that there is sufficient evidence to establish the accused's participation in the act and that there is a sufficient connection between the offenses such that proof of the independent act tends to prove the accused's participation in the crime for which he or she is on trial. Id. at 642." *Gadson v. State*, 263 Ga. 626, 627 (3), 628 (437 SE2d 313). In the case sub judice, a pretrial hearing was conducted pursuant to the State's notice of intent to introduce similar transaction evidence and the State's attorney then outlined the fac-

tual bases for admission of four alleged prior similar transactions involving defendant and young children. Defense counsel pointed out factual dissimilarities and questioned the logical and legal relevance of the similar transactions evidence. The trial court ruled as follows: "Reviewing these alleged similar activities, they seem to involve children of the same age bracket, the majority of them from the same area of residence. I think it would go to establish demeanor, motive, modus operandi and other factors the State would be required to prove in its main case, and I'll allow the similar transactions as outlined here today." It is our view that this determination implicitly included all the elements required by *Williams v. State*, 261 Ga. 640, 641 (2), 642 (b), supra. See *Evans v. State*, 209 Ga. App. 606, 607 (2) (434 SE2d 148).

6. In his sixth enumeration, defendant contends the trial court erred in allowing a psychiatrist to testify that he suffers from a delusional disorder manifested by an attraction for young girls; that defendant is a pedophile and that defendant "was more dangerous than a mere run of the mill [pedophile]."

The record reflects that Dr. Gene Able, a psychiatrist, testified, but he did not indicate that defendant molested the victim as a result of his being a pedophile. He testified that defendant's "particular variant of the delusional disorder is this attachment to children, to young girls[,]" and affirmed that "an individual such as [defendant is] more dangerous than a mere pedophile[.]" Specifically, Dr. Able explained that a pedophile who is also a child molester understands that his behavior is inappropriate and this understanding leads a pedophile to be more responsive to treatment. In contrast, a delusional disorder such as defendant's prevents him from understanding that his behavior is inappropriate and thus impedes effective treatment. Dr. Able's opinion testimony was based upon defendant's behavior as revealed in the audiotape of his interview with DFACS and the Douglas County Police Department. The jury listened to this tape before Dr. Able testified.

There is considerable doubt whether medical opinion that a particular defendant is "more dangerous than a mere pedophile" is admissible in a criminal proceeding, unless and until the defendant has put his character in issue. See *Harris v. State*, 261 Ga. 386 (405 SE2d 482). See also *Sanders v. State*, 251 Ga. 70, 73 (3) (303 SE2d 13). Accord *Collar v. State*, 206 Ga. App. 448 (2) (426 SE2d 43) (physical precedent); *Knight v. State*, 206 Ga. App. 529 (426 SE2d 1) (physical precedent). "However, we find that it is highly probable that the error did not contribute to the verdict, since the evidence of guilt was otherwise overwhelming. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1979)." *Sanders v. State*, 251 Ga. 70, 73 (3), 76, supra. Moreover, we view any error in admitting this opinion testimony as harmless since

Dr. Able's opinion was based upon facts already in evidence, i.e., a 26-year-old man's romantic attraction to a 12-year-old girl. *Sanders v. State*, 251 Ga. 70, 73 (3), 76, supra. Compare *Wellborn v. State*, 258 Ga. 570, 572 (2) (372 SE2d 220).

*Judgment affirmed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 24, 1994 —
RECONSIDERATION DENIED JULY 8, 1994 — 

*John Matteson*, for appellant.
*David McDade, District Attorney, Lois W. Gerstenberger, Assistant District Attorney*, for appellee.