S95A0701. ROBERSON v. THE STATE.
S95A0702. REYES v. THE STATE.
(461 SE2d 212)

THOMPSON, Justice.

James Roberson was convicted of malice murder and possession of a knife during the commission of a crime. He was tried jointly with his sister, Lisa Reyes, who was convicted of felony murder.[1] In these

---

[1] James Roberson was indicted on December 10, 1993, on charges of malice murder, felony murder, armed robbery, and possession of a knife during the commission of a crime. Lisa Reyes was indicted by a separate indictment that same day on charges of felony murder and armed robbery. Defendants were tried and convicted on all charges on April 29, 1994. For sentencing purposes, Roberson's convictions for felony murder and armed robbery were

appeals, defendants primarily assert that they were interviewed at the jail by the news media in violation of their right to counsel. We reject defendants' assertion because the police did not initiate, instigate, or participate in, the interviews.

1. Following their arrests, defendants were advised of their *Miranda* rights and they invoked their right to counsel. Within a few days, a television and radio news reporter interviewed defendants' mother. During the interview, she either suggested, or agreed that Reyes should be interviewed and, after speaking with Reyes, she informed the reporter that Reyes was amenable. The reporter telephoned the sheriff's office to arrange an interview with Reyes and it was conducted the next morning. Later that day, the media was informed that Roberson wanted to be interviewed, too, and another interview was arranged. Both Roberson and Reyes participated in that interview.

Prior to the interviews, defendants signed waiver forms which were provided by the sheriff's department. Pursuant to the forms, defendants "voluntarily" agreed to interviews with the news media, "realizing that [they had] the right to refuse" them and reserving "the right to terminate [them] at any time." Although defendants previously had invoked their right to counsel, lawyers had not yet been appointed to represent them and they were not reminded of their *Miranda* rights before they signed the waiver forms.

Deputy sheriffs escorted defendants from their cells to an interview room. The deputies remained in the interview room for security while the interviews were conducted. However, the deputies did not suggest, or ask, any question during the course of the interviews.

Once a criminal defendant invokes the right to counsel, the police cannot interrogate the defendant further unless counsel is present or the defendant initiates further conversations with the police. *Roper v. State*, 258 Ga. 847, 849 (375 SE2d 600) (1989). In this case, the interviews could not have taken place without the cooperation of the sheriff's office. But law enforcement personnel neither initiated nor participated in them. Moreover, the media representatives did not act as agents of the police. To the contrary, the interviews were conducted by the news media alone.

Defendants assert that they did not participate in the interviews voluntarily and knowingly. In this regard, Roberson argues that he was under the influence of prescribed psychotropic drugs when he signed the waiver form; and Reyes argues that, as a twenty-year-old,

merged into his malice murder conviction and Reyes's conviction for armed robbery was merged into her felony murder conviction. Defendants' motions for new trial were denied on November 11, 1994, and they timely filed their notices of appeal. The cases were docketed on January 25, 1995, and orally argued on April 17, 1995.

with a sixth grade education, she lacked the "social sophistication" to understand the full import of her actions. These assertions lack merit. The evidence demonstrates that defendants were fully capable of voluntarily and knowingly participating in the interviews.

It was not incumbent upon the State to protect defendants from incriminating themselves when they agreed to speak to the press. See *Bethea v. State*, 251 Ga. 328, 330 (7) (304 SE2d 713) (1983) (*Miranda* warnings are not required when defendant speaks to persons other than law enforcement officers or their agents). It cannot be said, therefore, that the police violated defendants' right to counsel.

2. At trial, Roberson called Dr. Wall, the physician for the county jail, as a witness and asked him what psychotropic drugs Roberson was taking during his incarceration. Dr. Wall identified those drugs as Haldol, Xanax, Zoloft and Cogentin. On cross-examination, the prosecutor asked Dr. Wall if any of the drugs would have prevented Roberson from making a knowing, voluntary statement to the press. Roberson objected, asserting the question called for an answer that was not within Dr. Wall's area of expertise. Although the trial court overruled Roberson's objection, it limited the scope of the prosecutor's inquiry, ruling that, to the extent that he knew, Dr. Wall could testify as to the effect of the drugs on Roberson at the time in question. Thereupon, Dr. Wall stated that the drugs are "used to stabilize" a patient and that, at the time he saw Roberson, "he seemed to be in control of his faculties."

Roberson asserts the trial court erred in permitting Dr. Wall to testify concerning the effects of the psychotropic drugs. We disagree. Dr. Wall merely stated what the drugs are supposed to do and added that Roberson appeared to be in control when he saw him. Dr. Wall's answer to the prosecutor's question was well within his area of expertise. See *Petty v. Folsom*, 229 Ga. 477, 481 (2) (192 SE2d 246) (1972) (whether or not physician is a psychiatrist is a matter which affects weight, but not admissibility, of testimony concerning mental condition); *Potts v. House*, 6 Ga. 324 (2) (1848) (physician can render opinion concerning mental capacity of testator).

3. Viewing the evidence in a light favorable to the verdict, we find the following: Defendants met the victim, Randy Walraven, in a bar. Walraven flashed a wad of money (approximately $200) and defendants decided to "roll" him. They spiked Walraven's drink and sold him prescription drugs. They left the bar with him and drove him to an isolated area. Roberson stabbed Walraven in the chest with Reyes's knife and took Walraven's money. Roberson and Reyes used the money to purchase food and beer. Roberson subsequently burned Walraven's wallet and hid Reyes's knife after cleaning it.

The evidence was sufficient to support Roberson's and Reyes's convictions beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S.

307 (99 SC 2781, 61 LE2d 560) (1979).

4. The trial court did not err in refusing Roberson's request to charge the jury on the defense of accident because it was not adjusted to the evidence. *Brooks v. State,* 262 Ga. 187, 188 (3) (415 SE2d 903) (1992).

5. The trial court did not abuse its discretion in denying Roberson's motion for change of venue. There was no showing that Roberson could not receive a fair trial due to pretrial publicity or the prejudice of individual jurors.[2] *Brown v. State,* 262 Ga. 833, 835 (7) (426 SE2d 559) (1993). See also *Woodbury v. State,* 264 Ga. 31, 32 (3) (440 SE2d 461) (1994).

6. Defendants inaccurately contend that the trial court charged the jury that it may infer a person of sound mind and discretion intends the natural and probable consequences of his actions if he uses a deadly weapon "with justification." The "certification of correction in transcript" demonstrates that defendants' contention is based upon a scrivener's error. The trial court correctly used the words "without justification."

We reject any suggestion that the "you may infer" language in the charge on intent was unconstitutionally burden shifting. The jury was clearly instructed that whether or not it made the inference was a matter solely within its discretion. The charge was permissive in nature and did not require the jury to draw a conclusion. *Wallace v. Higgs,* 262 Ga. 437 (421 SE2d 69) (1992); *Flynn v. State,* 255 Ga. 415, 416 (339 SE2d 259) (1986).

7. The trial court clearly charged the jury on more than one occasion that it was to determine the guilt of each defendant separately.

8. The trial court did not abuse its discretion in recharging only on the law of malice murder and felony murder in response to the jury's inquiry in that regard. *Golden v. State,* 263 Ga. 521, 522 (3) (436 SE2d 11) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 11, 1995.

*L. Cleveland Burton,* for appellant (case no. S95A0701).
*Albert F. Burkhalter, Jr.,* for appellant (case no. S95A0702).
*Stephen F. Lanier, District Attorney, Michael J. Bowers, Attor-*

---

[2] Out of forty prospective jurors, ten had heard nothing about the case and thirty averred that they were willing to render a verdict based on the evidence presented in court. The trial court excused one of the thirty for cause, concluding that that juror's mannerisms belied her claim that she could be impartial.

ney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General, for appellee.