## S98A0887. ELMORE v. THE STATE.
(501 SE2d 215)

CARLEY, Justice.

A jury found Elmon Elmore guilty of the malice murder of Cleo Geeter. After the trial court entered its judgment of conviction and a life sentence on the jury's guilty verdict, Elmore moved for a new trial. The trial court denied Elmore's motion, and he appeals.[1]

1. Geeter had been dead for several days when his body was found in a vacant house about a block from the apartment he shared with Elmore. Geeter died from blunt force trauma to the head. Items used to wrap the body, such as tape, string and a shower curtain, matched similar items found in the apartment. Geeter's bed was dismantled, and his mattress was soaked with blood. Blood also was found in the trunk of Geeter's car, which Elmore was driving at the time of his arrest. Before the murder, Elmore used Geeter's name and, after the murder, he continued to pose as Geeter. Prior to discovery of the body, Elmore was evasive about Geeter's whereabouts. He was in possession of Geeter's credit cards, and even applied for a driver's license in Geeter's name and withdrew money from Geeter's bank accounts. An eyewitness identified Elmore as the man he saw driving Geeter's car from the vacant house shortly before Geeter's body was discovered. This evidence is sufficient to authorize a rational trier of fact to find proof of Elmore's guilt of the malice murder of Geeter beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, Elmore filed a motion pursuant to former OCGA § 17-7-211 for production of scientific reports. Fingerprints were found on a beer bottle near Geeter's body and, although these fingerprints had not been tested, the State disclosed their existence to the defense. At trial, Elmore relied upon the absence of any fingerprint evidence as a weakness in the State's case. The State then requested a test of the fingerprints found on the beer bottle. This test resulted in a positive match with Elmore's fingerprints. The State made an immediate disclosure, but Elmore objected to admission of the test results and sought a continuance. The trial court ordered the State not to tender the test results until the following day, so that Elmore could "explore the issue further. . . ." In addition, the trial court authorized Elmore to seek "a further continuance" at that later time. Thereafter, Elmore interviewed the State's proposed fingerprint wit-

---

[1] The murder occurred on or about April 12, 1991. The grand jury returned its indictment during the May 1991 Term. The jury found Elmore guilty on January 31, 1992 and, on that same day, the trial court entered the judgment of conviction and life sentence. Elmore filed his motion for new trial on February 3, 1992, and the trial court denied that motion on February 6, 1997. Elmore filed his notice of appeal on March 7, 1997. The case was docketed in this Court on March 12, 1998. Oral argument was heard on May 18, 1998.

nesses. When the State eventually tendered the test results on the day following disclosure, the trial court admitted the evidence. Elmore enumerates this evidentiary ruling as an erroneous violation of his right to pre-trial discovery of scientific reports.

The State is not precluded from introducing evidence of the result of a scientific test performed immediately prior to or during the trial, "absent a showing that the prosecution attempted to circumvent the discovery process. [Cits.]" *Wellborn v. State*, 258 Ga. 570, 572 (1) (372 SE2d 220) (1988). As in *Wellborn*, the circumstances in this case do not show any conduct by the State which would bar admission of the result of the test of the fingerprints. Moreover, when the State immediately disclosed the test results, the trial court gave Elmore a reasonable opportunity to investigate and to interview the State's witnesses. See *Iona v. State*, 260 Ga. 83, 84 (3) (389 SE2d 754) (1990); *Wilburn v. State*, 199 Ga. App. 667, 669 (3) (405 SE2d 889) (1991). Compare *Taylor v. State*, 172 Ga. App. 408, 409 (2) (323 SE2d 212) (1984). Upon the State's subsequent tender of the test results, Elmore did not make a formal request for any specific amount of additional time, but merely suggested the vague possibility of having the fingerprints tested by an out-of-state expert. See *Davis v. State*, 204 Ga. App. 657, 658 (4) (420 SE2d 349) (1992). Compare *Miller v. State*, 208 Ga. App. 20, 22 (2) (b) (430 SE2d 159) (1993). Independent testing would appear to relate to the issue of impeachment rather than admissibility. While offering a possibility of obtaining an expert opinion contrary to that reached by the State's witnesses, independent testing would seem to have little, if any, bearing on the ultimate admissibility of the State's test result as evidence of Elmore's guilt. Moreover, even if Elmore made a proper request for additional time to obtain independent testing which the trial court erroneously refused, admission of the result of the State's test would be harmless, considering the overwhelming additional proof of Elmore's guilt. See *Wellons v. State*, 266 Ga. 77, 82 (2) (463 SE2d 868) (1995); *Harvill v. State*, 190 Ga. App. 353, 355 (3) (378 SE2d 917) (1989).

3. Prior to trial, Elmore filed a pro se motion seeking appointment of new counsel on the ground that the attorney currently representing him was ineffective. Elmore urges that the trial court erred in failing to conduct a hearing on this motion. However, the record indicates that, without ever invoking a ruling on his pro se motion, Elmore proceeded to trial with his originally appointed counsel and thereby waived the issue for appellate review. See *Pruitt v. State*, 258 Ga. 583, 587 (7) (373 SE2d 192) (1988); *Dover v. State*, 250 Ga. 209, 212 (4) (296 SE2d 710) (1982). Compare *DeLoach v. State*, 198 Ga. App. 880 (403 SE2d 866) (1991); *Heard v. State*, 173 Ga. App. 543 (1) (327 SE2d 767) (1985). Additionally, error, if any, in the trial court's failure to make a pretrial inquiry into the pro se request for the

appointment of new counsel was harmless, since Elmore's new appellate counsel has not enumerated as error any alleged ineffectiveness of trial counsel.

4. Elmore enumerates as error the trial court's failure to give a requested "two theories" charge. At the time of Elmore's trial, such a charge was authorized in a case based entirely upon circumstantial evidence. See *General v. State*, 256 Ga. 393, 394 (3) (349 SE2d 701) (1986). Subsequently, however, this Court held that a "two theories" charge is not required if the trial court properly instructs the jury on circumstantial evidence. *Smith v. State*, 264 Ga. 857, 860 (4) (452 SE2d 494) (1995). It is well established that an appellate court applies the law as it exists at the time its opinion is rendered. *State v. Martin*, 266 Ga. 244, 245 (1) (466 SE2d 216) (1996). It would be pointless to reverse a conviction on the basis of *General*, when, at any retrial, *Smith* would be the applicable law. Therefore, for purposes of this appeal it is immaterial whether the evidence against Elmore was entirely circumstantial, since *Smith*, rather than *General*, is dispositive of this issue.

A review of the charge shows that the trial court gave proper instructions on circumstantial evidence. Therefore, the failure to give Elmore's requested "two theories" charge was not error. *Brinson v. State*, 268 Ga. 227, 230 (6) (486 SE2d 830) (1997); *Smith v. State*, supra at 860 (4).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 8, 1998.

*William F. Rucker,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Maria Murcier-Ashley, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.