**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 23, 2014**

# In the Court of Appeals of Georgia

A14A0154. CALHOUN v. THE STATE.

RAY, Judge.

A jury convicted James M. Calhoun of two counts of aggravated child molestation (OCGA § 16-6-4 (c)), two counts of child molestation (OCGA § 16-6-4 (a)), and one count each of aggravated sexual battery (OCGA § 16-6-22.2), false imprisonment (OCGA § 16-5-41), and enticing a child for indecent purposes (OCGA § 16-6-5).[1] On appeal from the trial court's denial of his motion for new trial, he argues that the trial court erred in denying his request for a continuance after the State proffered new evidence. He also contends that he received ineffective assistance of

---

[1] Calhoun was acquitted of one count of child molestation and one count of enticing a child for indecent purposes.

counsel. He does not challenge the sufficiency of the evidence. For the reasons that follow, we affirm.

On appeal, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Calhoun, who was about 60 years old, committed sexual crimes against two neighbor girls, E. M., who was seven, and G. B., who was twelve. Calhoun gave the girls candy and treats, and sometimes watched them while their mother was out. The girls' mother believed that he was "like a grandfather" to her children. G. B. made an outcry to her mother after an incident that occurred on Halloween, 2011, when Calhoun made G. B. give him oral sex and she threw up on her Halloween costume. G. B.'s mother called the police. A chemical test of the vomit on G. B.'s Halloween costume revealed the presence of seminal fluid, but did not show spermatozoa that would be eligible for DNA testing.

Police interviewed Calhoun after reading him his rights and after he signed a Miranda waiver form. In the interview, which was played for the jury and admitted without objection, Calhoun stated that although he "did not initiate nothing," G. M. came to his home and told him, "I want to know how to do it" and "for some reason, I decided to show her." He told police that he let G. B. feel his penis and put her

hands in his pants. She came back two days later and he "let her do it again." The next time she came back, "I messed around with her." He said he "was trying to help her out" because she wanted to know how "it" feels. "I just showed her how it feels if she . . . has sex" and that he did so by using his hands. He later denied having sex with G. B., but said he touched her genital area with his hands and that they performed oral sex on each other. Although he said that he was trying to help her, he acknowledged that "it wasn't no favor."

1. Calhoun argues that the trial court erred in denying his motion for a continuance after the State announced, on the eve of trial, that it would be admitting the results of the seminal fluid test the following day. Calhoun argues that he had "no opportunity" to find rebuttal evidence and witnesses.

"[T]he grant or denial of a motion for continuance is within the sound discretion of the trial court, OCGA § 17-8-22, and will not be disturbed absent a showing of abuse of that discretion. Mere shortness of time for preparation does not in itself show a denial of the rights of the accused. He must also show harmful error." (Citations and punctuation omitted.) *Robinson v. State*, 202 Ga. App. 576, 577 (2) (a) (415 SE2d 21) (1992).

3

Here, counsel for the State informed the trial court that although he had requested the testing earlier, the Georgia Bureau of Investigation ("GBI") initially told him it did not accept vomit for DNA testing. He later learned that he could request seminal fluid testing. He did so, but only learned that the test had been performed the day prior to trial, when he notified opposing counsel. The test results did not post until the day of trial. The trial court asked defense counsel how a continuance would benefit her client given Calhoun's incriminating admissions to police. Defense counsel responded that had she known of the seminal fluid report earlier, she could have investigated other possible perpetrators by interviewing people in the community. The trial court directed the State's counsel not to mention the test results in opening statements that day. The trial court also decided that, because the test results would not be introduced until the following day, the three investigators in defense counsel's office would have a day and an evening to interview witnesses from the crime lab and the community and to gather evidence.

*Elmore v. State*, 269 Ga. 528, 528-529 (2) (501 SE2d 215) (1998) involved fingerprint evidence discovered and disclosed to the defense during trial and admitted the day after disclosure. Our Supreme Court upheld the trial court's denial of a continuance, finding that, "[t]he State is not precluded from introducing evidence of

4

the result of a scientific test performed immediately prior to or during the trial, absent a showing that the prosecution attempted to circumvent the discovery process." (Citation and punctuation omitted.) Id. at 529 (2).

As an initial matter, when asking for the continuance, defense counsel stated that she was "not alleging that the State has any bad faith." Further, the record shows that at a pretrial hearing on April 17, 2012, well before trial on July 16-18, 2012, the State's attorney had stated that he was seeking DNA testing. The trial court, as noted above, prohibited the State from mentioning those results in its opening statement, thus giving the defense a day for investigation. In *Elmore*, our Supreme Court found one day to be "a reasonable opportunity to investigate and interview" witnesses. Id.

> [T]o warrant a reversal on appeal, the appellant must also show that harm resulted from the denial of the continuance. To show harm, [Calhoun] was required to *specifically identify what evidence or witnesses he would have put forth in his defense* if his counsel had been given more time to prepare; speculation and conjecture are not enough.

(Punctuation and footnotes omitted; emphasis supplied.) *Wynn v. State*, 322 Ga. App. 66, 69 (3) (744 SE2d 64) (2013). At the motion for new trial hearing, Calhoun presented no evidence or testimony implicating a different perpetrator. His trial counsel testified, "I don't know if – how the expert [on the semen test] would actually

5

have been helpful in this case, but it could have been." Calhoun's new counsel at the hearing stated that he had no expert to rebut the State's evidence. The trial court did not abuse its discretion in denying the motion for continuance. Id. at 70 (3).

2. Calhoun argues that he received ineffective assistance of counsel. In raising ineffective assistance, Calhoun

> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4), (728 SE2d 225) (2012). The trial court "makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous." (Footnote omitted.) *Sarratt v. State*, 299 Ga. App. 568, 569 (2) (683 SE2d 10) (2009). "[W]e independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill*, supra.

(a) Calhoun contends that trial counsel was ineffective in failing to seek to suppress his incriminating statements to police pursuant to *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964). On appeal, he argues that he made

6

these admissions because he was concerned about his family waiting for him in the car and because he was on medication that affected his ability to understand what was happening.

However, at the very beginning of his interview with police, after being read his Miranda rights, Calhoun stated unequivocally, "I understand my rights." At the hearing on his motion for new trial, Calhoun said that after police interviewed him, he told trial counsel that "I was under that medication and I was tired and I was – I just said whatever I needed to say to get out of that room." Calhoun never stated that the medication affected the voluntariness of his statements or his ability to understand what was happening, nor did he say his statements were coerced.

Trial counsel testified at the motion for new trial hearing that she analyzed Calhoun's statement for voluntariness.

> [H]e came across very calm. He came across like he knew what he was saying. The investigator in the particular case was not very overbearing, in my opinion. There was nothing, after listening to the statement . . . five or six times, to lead me to believe that what he said was not voluntary. He did waive his rights. He also signed a physical form, I believe, saying that it was voluntary.

She also testified she was not concerned that Calhoun's medication had affected the voluntariness of his statement, and that Calhoun never told her that his statement was involuntary or that police had coerced his statement or offered him any benefit if he confessed.

"The decision of whether to file a motion to suppress is a matter of professional judgment, and we will not judge counsel's trial strategy in hindsight." (Citation and punctuation omitted.) *Lopez-Jiminez v. State*, 317 Ga. App. 868, 872 (2) (b) (733 SE2d 42) (2012). Here, it is clear that counsel carefully assessed the facts and made a strategic decision not to move to suppress because she saw no indication that Calhoun's statement was involuntary. See *Cuvas v. State*, 306 Ga. App. 679, 681 (1) (b) (703 SE2d 116) (2010) (counsel's failure to file meritless motion is not ineffective assistance). "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) Id. Accord *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004) (failure to file motion to suppress is not ineffective assistance when defendant does not show how motion to suppress would have been

successful). Here, Calhoun has failed to show that his statements were involuntary and should have been suppressed.

(b) Calhoun also argues that trial counsel was ineffective in recommending that he not testify in his own defense.

At the motion for new trial hearing, trial counsel testified that she and Calhoun wrote notes back and forth during trial about whether he should testify. She stated that much of what Calhoun wanted to testify about was "impermissible" from an evidentiary standpoint because it involved character evidence such as "the promiscuity of the alleged victims[.]" She and Calhoun both stated that counsel advised him not to testify because of concern about his prior felonies coming in and making him look bad in front of the jury. Trial counsel stated that "I told him that it was up to him to decide . . . I can't make that decision for him[,]" and that he made

the choice not to testify. Calhoun testified that he knew that he could have testified at trial, but followed his attorney's advice not to testify.[2]

We find that "not only did counsel's testimony support the trial court's ruling on the motion for new trial, but [Calhoun] did not produce evidence as to what he should have known at the time of his decision about whether to testify that he did not, nor how that information would have altered his decision." (Citation and punctuation omitted.) *Jacobs v. State*, 299 Ga. App. 368, 373 (2) (b) (683 SE2d 64) (2009). The record shows that trial counsel discussed with Calhoun his right to testify and Calhoun chose not to testify after being fully informed. The evidence supports the conclusion that Calhoun failed to meet his burden of showing ineffective assistance. *Lupoe v. State*, 284 Ga. 576, 579 (3) (d) (669 SE2d 133) (2008).

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*

---

[2] We note that the trial transcript shows that, in response to questions from the court, Calhoun affirmed several times that he knew he had a right to testify but was not required to, and that he had ample opportunity to discuss with his lawyer whether to testify. At trial, Calhoun asked to speak with counsel about testifying, and the court told him to take all the time he needed. He spoke with counsel, then again stated that he did not wish to testify, affirming that he had made the decision freely, voluntarily, and knowingly. See *Gibson v. State*, 290 Ga. 6, 9 (4) (717 SE2d 447) (2011) (although a court may, as a prophylactic measure, advise defendant of his right to testify and may determine on the record whether the decision is voluntary, knowing, and intentional, courts have no duty to do so where defendant made the decision himself after consulting with counsel).