699 S.E.2d 363 (2010)
BEARFIELD
v.
The STATE.
No. A10A0655.
Court of Appeals of Georgia.
July 8, 2010.
*364 Cerille Baron Nassau, Jonesboro, for appellant.
Tracy G. Lawson, Dist. Atty., Anece Baxter White, Asst. Dist. Atty., for appellee.
BERNES, Judge.
Following a jury trial, Joseph Bearfield was convicted of aggravated child molestation; aggravated assault; enticing a child for an indecent purpose; kidnapping; false imprisonment; cruelty to children; burglary; theft by taking; and striking an unattended vehicle. Bearfield filed a motion for new trial, which the trial court denied. On appeal, Bearfield challenges the sufficiency of the evidence supporting his convictions. He also contends that the trial court erred in sustaining a hearsay objection to a medical report reflecting that the child victim had made an inconsistent statement and that his trial counsel provided ineffective assistance. We discern no reversible error and affirm.
On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be *365 upheld. The testimony of a single witness is generally sufficient to establish a fact.
(Citation and punctuation omitted.) Payne v. State, 269 Ga.App. 662, 662-663, 605 S.E.2d 75 (2004).
The trial evidence showed that Bearfield and the nine-year-old victim, G.G., resided in the same apartment complex. On September 1, 2007, Bearfield approached G.G. and her friend as they were walking toward G.G.'s residence. Bearfield asked the girls if they wanted to help him pass out some flyers. When the girls agreed to help, Bearfield took them to his neighboring apartment.
After luring the girls to his apartment, Bearfield instructed G.G.'s friend to leave. Upon being left alone in the apartment with G.G., Bearfield began squeezing G.G.'s buttocks and told G.G. to pull down her pants. G.G. complied because she was scared. Bearfield then told G.G. to turn around. G.G. attempted to leave the apartment, but Bearfield grabbed her arms and forced her onto the couch. Bearfield stood behind G.G., pulled down his pants, and attempted to insert his penis into G.G.'s anus. In describing the incident, G.G. stated that Bearfield's penis touched the area of her anus, which caused her to feel pressure in her buttocks, but that there had been no anal penetration.
The friend informed G.G.'s older brother that Bearfield had taken G.G. to his apartment. G.G.'s brother went to Bearfield's apartment, knocked on the front door, and asked if G.G. was there. Bearfield answered, without opening the door, and attempted to disguise his voice in falsetto to sound like a child or a female. Although Bearfield denied that G.G. was in his apartment, G.G.'s brother did not leave and persisted in his inquiry. G.G.'s brother then heard G.G. scream for help inside the apartment, and he began kicking the front door to force it open. Bearfield ran to G.G., picked her up, and threw her off his second story rear balcony. G.G. was frightened and was "thinking [that her] life was over." When G.G. landed on the ground, she sustained injuries to her lip, legs, and stomach.
After G.G.'s brother managed to force his way into the apartment, Bearfield ran past him. Bearfield fled to his vehicle and sped away from the scene. As he fled, Bearfield lost control of his vehicle and collided with an unattended vehicle that had been parked in the complex's lot. Bearfield's vehicle also ran into a gate and a tree. When Bearfield finally regained control of his vehicle, he drove away from the apartment complex. He did not leave a note providing his contact information to the owner of the unattended vehicle after the collision.
After the incident, G.G.'s brother saw G.G. emerge from the area behind the apartment building. She was not wearing her pants or shoes, her knees were scraped, and she was crying. G.G.'s brother went to his sister, took her by the hand, and walked her home. He later went back to Bearfield's apartment and retrieved G.G.'s clothing.
G.G. was transported to the hospital, where she was examined and treated for her injuries. The nurse who had examined G.G. stated that G.G. had injuries to her lip, leg, and knee. The nurse also testified that G.G. had a superficial cut next to her anus, which was a recent injury and appeared to be consistent with a penis being forcibly pressed against the area of the anus. A doctor who had examined G.G. likewise testified that he had observed the cut outside G.G.'s anus and that the injury was consistent with the molestation allegation.
Police responded to the apartment complex to investigate the incident. During a search of Bearfield's apartment, the investigating officers observed a pair of male underwear on the living room couch. The officers obtained statements from witnesses who had observed Bearfield fleeing from the scene. They noted and photographed skid marks and tire tracks that led toward the damaged vehicle and gate that were struck by Bearfield during his flight. An officer testified that he was able to determine the direction in which Bearfield's vehicle had traveled based upon the tire tracks.
The officers subsequently located Bearfield's vehicle parked at his ex-girlfriend's residence. They testified that Bearfield's vehicle had front-end damage that was consistent with evidence of the collisions found at the apartment complex. Bearfield's ex-girl-friend *366 testified that Bearfield had informed her that he had been chased from his apartment and that he had hit a fence during his flight. She further stated that Bearfield had left his vehicle at her house after the incident.
Later that day, Bearfield went to the facility of the Clayton County Public Schools Maintenance Department, where he had been employed. The facility was closed at that time, and Bearfield did not have authority to enter the building. The facility had security cameras posted throughout its internal and external areas, which recorded Bearfield's activities while he was at the facility. The videotape depicted Bearfield using a code to gain entrance into the gate of the maintenance warehouse. The videotape also depicted Bearfield driving a maintenance truck away from the facility. Bearfield's supervisor identified Bearfield as the person shown in the videotape and stated that Bearfield did not have authority to take the maintenance truck. The maintenance truck was later found abandoned, with the keys locked inside of it.
Bearfield was subsequently arrested and charged with multiple criminal offenses. At trial, Bearfield was positively identified as the perpetrator of the crimes. After hearing the evidence and engaging in deliberations, the jury returned a guilty verdict.
1. Based upon the evidence set forth above, Bearfield's convictions were authorized. See OCGA §§ 16-5-21(a)(1) (aggravated assault with intent to rape); 16-5-40(a) (kidnapping); 16-5-41(a) (false imprisonment); 16-5-70(b) (cruelty to children in the first degree); 16-6-4(c) (aggravated child molestation); 16-6-5(a) (enticing a child for indecent purposes); 16-7-1(a) (burglary); 16-8-2 (theft by taking); 40-6-271(a) (duty upon striking unattended vehicle); Jackson, 443 U.S. at 318-319(III)(B), 99 S.Ct. 2781.
Bearfield's contention that his conviction was against the weight of the evidence affords no basis for reversal. "The weight of the evidence and witness credibility are not reviewable on appeal." Gable v. State, 222 Ga.App. 768, 769(1), 476 S.E.2d 66 (1996). See also Payne, 269 Ga.App. at 664, 605 S.E.2d 75 (the weight to be given to the evidence is solely in the province of the jury and does not provide a basis for reversal on appeal); Gentry v. State, 215 Ga.App. 270, 270-271(1), 450 S.E.2d 304 (1994) (the appellate court examines the sufficiency, not the weight, of the evidence).
2. Bearfield also contends that the trial court erred in sustaining the state's hearsay objection when he attempted to cross-examine the nurse regarding an inconsistent statement that G.G. had allegedly made, which had been documented in a medical report.
The record reflects that G.G. had been examined and treated by two doctors and a nurse at the hospital. Dr. Zykera Presley, who had obtained and reported G.G.'s initial medical history, was not called to testify at trial. Rather, the nurse and the second doctor who had examined G.G. were called to serve as trial witnesses. During the nurse's cross-examination, Bearfield's counsel presented a medical report prepared by Dr. Presley and asked whether Dr. Presley's notes reflected that G.G. had made an inconsistent statement denying that anal contact had occurred.[1] The state objected on the basis of hearsay. The trial court sustained the objection.
Bearfield contends that the evidence was erroneously excluded since it was admissible under OCGA § 24-3-4[2] as a statement made for purposes of medical diagnosis or treatment and describing medical history. See Allen v. State, 247 Ga.App. 10, 12-14(1), (2), *367 543 S.E.2d 45 (2000) (holding that the history a patient gives to an emergency room physician during examination or treatment is admissible for impeachment purposes under the hearsay exception codified in OCGA § 24-3-4). Notwithstanding his contention, however, Bearfield has failed to show reversible error by the record.
As an initial matter, the medical report referenced in Bearfield's claim was not introduced for inclusion in the appellate record. Consequently, we have no means of determining whether the alleged impeachment evidence actually exists. "The burden is on the party alleging error to show it affirmatively by the record. This court cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence or testimony." (Citations and punctuation omitted.) Fletcher v. Estes, 268 Ga.App. 596, 597(1), 602 S.E.2d 164 (2004).
Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort so that both the trial court and the appellate court can know whether the evidence really exists. In the absence of such a proffer, the assignment of error is so incomplete as to preclude its consideration by this court.
(Citation omitted.) State v. Winther, 282 Ga.App. 289, 291, 638 S.E.2d 428 (2006). See also French v. State, 288 Ga.App. 775, 777(3), 655 S.E.2d 224 (2007).
Even if we were to rely upon trial counsel's general description of the medical report's content, no harm from the alleged error has been shown. At the motion for new trial hearing, trial counsel testified that the medical report contained information that may have impeached G.G. "if [she] was saying that her anus had been penetrated[.]" Pretermitting whether there were any inconsistencies in G.G.'s descriptions of the molestation act, G.G. testified at trial that Bearfield's penis did not penetrate or go inside of her anus, but rather, had "[t]ouched that area."[3] Accordingly, the excluded evidence would have been cumulative of the trial testimony that had already been admitted. In light of its cumulative nature, any error in the exclusion of the evidence was harmless. See Dixon v. State, 256 Ga. 658, 660-661(2), 352 S.E.2d 572 (1987); Hammond v. State, 237 Ga.App. 238, 240(3), 515 S.E.2d 183 (1999).
3. Lastly, Bearfield claims that his trial counsel rendered ineffective assistance by failing to subpoena Dr. Presley and failing to recognize that she was a necessary witness for impeachment purposes. To establish a claim of ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Bearfield must show both that his trial counsel's performance was deficient and that the deficiency prejudiced his defense such that there is a reasonable probability that the outcome at trial would have been different. See Payne v. State, 273 Ga.App. 483, 485(2), 615 S.E.2d 564 (2005); Guzman v. State, 260 Ga.App. 689, 693, 580 S.E.2d 654 (2003). "The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." (Citations and punctuation omitted.) Sapeu v. State, 222 Ga.App. 509, 511(5), 474 S.E.2d 703 (1996).
Bearfield has not made the requisite showing of prejudice in this case. As explained in Division 2 above, the impeachment evidence purportedly contained in Dr. Presley's medical report was cumulative of evidence that had already been placed before the jury. Bearfield has not alleged or shown that Dr. Presley's testimony would have been beneficial to his defense in any other respect. Consequently, his claim fails. See Payne, 273 Ga.App. at 485(2), 615 S.E.2d 564; Sapeu, 222 Ga.App. at 512(5), 474 S.E.2d 703.
Judgment affirmed.
BARNES, P.J., and Senior Appellate Judge G. ALAN BLACKBURN concur.
NOTES
[1] We note that the nurse stated that she had not previously read Dr. Presley's medical report and had not discussed the case with Dr. Presley. Although the second doctor testified that he had reviewed Dr. Presley's medical report, he was not cross-examined regarding the victim's alleged inconsistent statement. And although G.G. also testified at trial, she likewise was not questioned about her statements to Dr. Presley.
[2] OCGA § 24-3-4 provides that

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence.
[3] Notably, the indictment charging Bearfield with the aggravated child molestation offense did not allege that there had been any anal penetration. Rather, the indictment alleged that Bearfield had committed the offense by "forcing his penis against [G.G.'s] anus," which caused a physical injury, to wit: a cut on her anus area. (Emphasis supplied.)