**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**December 1, 2023**

# In the Court of Appeals of Georgia

A23A1336. MOHR v. THE STATE.

FULLER, Senior Judge.

A jury found Stuart James Mohr guilty of aggravated assault. Following the denial of his motion for new trial, Mohr appeals, arguing that the trial court erred in denying a motion to suppress and in precluding the introduction of certain testimony. Mohr also alleges that he received ineffective assistance of counsel. For reasons that follow, we affirm.

Viewed favorably to the verdict,[1] the evidence shows that, on the night of March 16, 2017, Mohr – who owns a bar – was celebrating the fact that his bar had been approved as a Keno retailer. Mohr offered drinks to his patrons, including the victim. The victim and Mohr "developed a mutual attraction" and began kissing.

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

According to Mohr, he thought the victim would be spending the night with him. However, a second bar patron, Brian S., inserted himself into the conversation. Mohr believed the victim "was welcoming [Brian S.] into [their] situation."

Later that night, after the bar had closed, Brian S. began shooting pool with the victim. According to Mohr, the two were playing "strip pool," and Brian S. removed his shirt. Mohr came out of a back room and stood for a moment watching the victim play pool with a shirtless Brian S. Mohr then walked behind the bar, at which point the victim approached him. The two apparently talked before the victim went back to her pool game. Less than two minutes later, the victim returned to the bar; as soon as she reached the bar, Mohr hit her in the face with such force that she toppled over a bar stool and fell to the ground. After a few seconds, the victim stood up and turned her back to Mohr. Mohr then picked up a trash can from behind the bar and threw it at the victim. He also threw two other bar items at her. Several minutes later, Mohr walked from the bar area to the pool table where he stood in front of the victim. The victim began to walk away, but Mohr grabbed her arm, pulled her back, and slammed her face-first into the pool table. As the victim rose, she turned toward Mohr, who slammed her back into the pool table. Mohr then lifted the victim up and again threw

her onto the pool table. While holding the victim on the pool table, Mohr began to pull at her pants. At this point, Brian S. approached Mohr, who walked away.

Sheriff's deputies were called to the scene and discovered the victim with "a large amount of blood on the front of her clothing, her shirt and her pants, and over her face." The victim was taken by ambulance to a hospital where she remained for five days. According to the victim, she sustained a concussion and continues to suffer from memory problems.

Mohr was arrested and charged with simple battery. The next day, deputies went to the bar to get the surveillance video. A deputy spoke with the bar's manager, who voluntarily provided the recording system. Mohr gave an investigator the password to access the system, but the investigator obtained a search warrant prior to watching the video. Thirteen days after the warrant was issued, it was executed. After the investigator watched the video, the charge against Mohr was upgraded to aggravated assault.

At trial, the surveillance video was played for the jury, and it showed Mohr striking the victim, throwing things at her, and slamming her onto the pool table. Based on the evidence, the jury found Mohr guilty of aggravated assault.

1. Mohr moved to suppress the surveillance video, arguing among other things that the manager of the bar lacked authority to consent to the search. The trial court denied the motion, finding that police were authorized to seize the recording equipment to prevent the destruction of the video and, in the alternative, the search was permissible under the "independent source doctrine" because the "subsequent acquisition of a search warrant to view the contents of the DVR system render[ed] any issues with the initial seizure moot." The trial court also found that the manager had the apparent authority to give the deputies the recording equipment. Mohr challenges the denial of his motion to suppress on appeal.

> In reviewing a trial court's ruling on a motion to suppress, an appellate court generally must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court. But this Court reviews de novo the trial court's application of law to the undisputed facts.

*Lopez-Lopez v. State*, 367 Ga. App. 834, 837 (888 SE2d 631) (2023) (citations, footnotes and punctuation omitted). We will uphold a trial court's ruling on a motion to suppress if it is right for any reason. *Chambers v. State*, 351 Ga. App. 389, 391 (1) (831 SE2d 11) (2019).

4

A search and seizure is reasonable if it is conducted pursuant to a valid search warrant or with consent from (1) the individual whose property is searched; (2) a third party who has common authority over the property; or (3) if a police officer could have reasonably believed that a third party had common authority over the property. Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes. In some circumstances, a third party who purports to consent to a search lacks the actual authority to do so, but law enforcement may rely on that individual's apparent authority to give consent, if such reliance is reasonable.

*Massey v. State*, 350 Ga. App. 427, 431 (2) (b) (827 SE2d 921) (2019) (citations and punctuation omitted).

Here, the manager testified that she had a key to the office where the video equipment was kept and that she was in charge of the bar when Mohr was not there. She was responsible for scheduling, inventory, deliveries, banking, opening and closing the bar. Given the breadth of the manager's responsibilities at the bar, it was not unreasonable for the deputies to believe that the manager had the authority to provide the recording equipment. See *Massey*, 350 Ga. App. at 432 (2) (b). Accordingly, the seizure of that equipment was lawful.

Nevertheless, Mohr contends the subsequent search was unlawful because the deputies did not execute the warrant within ten days as required by OCGA § 17-5-25.

5

However, it does not appear that Mohr invoked OCGA § 17-5-25 below, and the trial court made no ruling as to whether suppression was warranted based on the State's failure to comply with the time requirements of OCGA § 17-5-25. And "in challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below." *Maxwell v. State*, 367 Ga. App. 302, 306 (1) (885 SE2d 39) (2023) (citation and punctuation omitted).

2. At trial, Mohr attempted to question the victim about prior false allegations she had made that he contends were "substantially similar to the accusation[s]" the victim made against Mohr.[2] The trial court ruled that Mohr could not introduce evidence of the victim's prior bad act without complying with OCGA § 24-4-404 (b) and providing notice to the State. On appeal, Mohr contends that the trial court erred in requiring notice.

Under OCGA § 24-4-404 (b), evidence of prior bad acts is not admissible either to prove the character of a person or to show that the person acted in conformity with the prior bad acts; however, such evidence may "be admissible for

---

[2] At the hearing on the motion for new trial, Mohr made a proffer that the victim had previously accused a bar manager of punching her when she, in fact, punched herself and falsely accused the manager.

other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." With regard to criminal cases, the statute provides:

> The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

OCGA § 24-4-404 (b).

As noted by Mohr, the notice requirement in OCGA § 24-4-404 (b) applies only to the prosecution in a criminal proceeding. Accordingly, the trial court erred to the extent it precluded Mohr from questioning the victim about her prior false allegations based on lack of notice. But this error does not entitle Mohr to reversal. Here, surveillance video showed Mohr beating the victim; the case did not turn on the victim's credibility. Under these circumstances, it is highly probable that the trial court's error had no bearing on the verdict. See *Smith v. State*, 356 Ga. App. 211, 213 (1) (844 SE2d 869) (2020) (trial court's error in admitting evidence under OCGA § 24-4-404 (b) was harmless where surveillance video established defendant's guilt).

7

3. At trial, Mohr took the stand and his attorney questioned him about his interaction with the victim. Four times, Mohr began to testify as to what the victim said to him, and the State objected on hearsay grounds. The trial court sustained the objections. On appeal, Mohr contends that the trial court erred in excluding the testimony because the statements were being offered to show their effect on Mohr and not for the truth of the matter asserted. See OCGA § 24-8-801 (c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

With regard to three of the sustained hearsay objections, Mohr did not argue below that he was offering the testimony for a non-hearsay purpose. Accordingly, he has waived any error with respect to those two rulings. See *Payne v. State*, 273 Ga. App. 483, 487 (6) (615 SE2d 564) (2005).

With regard to the fourth hearsay objection, Mohr testified that he slapped the victim. Counsel asked why he slapped her, and Mohr responded: "It was supposed to be a joke. . . . She had made a reference to me asking —" At that point, the State objected; Mohr's attorney responded "I think this maybe could go . . . to the effect of the hearer," but the trial court sustained the objection. After the ruling, Mohr did not

8

seek to proffer what the rest of his testimony would have been, and he made no such proffer at the hearing on his motion for new trial.

"The burden is on the party alleging error to show it affirmatively by the record. This court cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence or testimony." *Bearfield v. State*, 305 Ga. App. 37, 41 (2) (699 SE2d 363) (2010) (citations and punctuation omitted). Because Mohr has not shown what his testimony would have been, he has not met his burden of demonstrating error.

4. Finally, Mohr contends that he received ineffective assistance of counsel.

> [I]n general, when a defendant claims that his trial counsel was ineffective, he has the burden of establishing that (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. And when a trial court determines, as the court below did here, that a defendant did not receive ineffective assistance, we will affirm that decision on appeal unless it is clearly erroneous.

*Pepe-Frazier v. State*, 331 Ga. App. 263, 269 (3) (770 SE2d 654) (2015) (citations and punctuation omitted). Furthermore, if a defendant fails to establish one of the two

9

prongs, we do not need to examine the other. *Robinson v. State*, 308 Ga. 543, 553 (3) (842 SE2d 54) (2020).

(a) Mohr contends that trial counsel was ineffective in failing to introduce the victim's medical records at trial. The attorney assumed the State would be tendering the records and thus failed to provide notice of his intent to have the records admitted. See OCGA §§ 24-8-803 (6) (business records exception to hearsay); 24-9-902 (a) (11) (certification and notice requirements for admission of business records). According to Mohr, those records would have shown both the victim's level of intoxication and that she did not, in fact, have a concussion. He claims the absence of the medical evidence hampered his ability to impeach the victim's credibility regarding the extent of her injuries.

We find no reversible error. Mohr was not charged with aggravated assault for concussing the victim; he was charged with assaulting the victim with his hands, "by striking [the victim] and slamming the head of [the victim] into a table causing a laceration of the chin and swelling and bruising to the face[.]" The surveillance video shows what appears to be a brutal assault, and the deputies called to the scene saw the bloodied victim. The medical records – which were proffered at the hearing on the motion for new trial – showed that the victim suffered "significant trauma to her face"

10

and was hospitalized for several days. Under these circumstances, Mohr has not demonstrated that he was harmed by his attorney's failure to have the medical records admitted. See *Harrell v. State*, 253 Ga. App. 691, 698 (5) (c) (560 SE2d 295) (2002) (no reasonable probability that obtaining the victim's medical records would have affected the outcome at trial).

(b) Mohr contends that his counsel rendered ineffective assistance by failing to properly advise him of the State's plea offer for twelve years or for "an open, blind plea" in which the prosecutor would play the surveillance video for the trial court before sentencing. After discussing the potential plea agreement with trial counsel, Mohr rejected the offer. According to Mohr, at the time he did so, he thought his attorney would be able to introduce evidence of the post-traumatic stress he suffered following his military service and the victim's medical records, both of which he believed would have been favorable to his defense. Mohr argues that his attorney should have known the "evidence was clearly inadmissible" and advised him to accept the plea offer, which he claims he would have taken.

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *State v. Dorsey*, 364 Ga. App. 731, 733 (1) (875 SE2d 900) (2022) (citation and punctuation omitted).

11

A defendant claiming ineffective assistance based on rejecting a plea offer because of counsel's deficient advice must establish prejudice by showing: (1) that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, meaning that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances; (2) that the trial court would have accepted the terms of the negotiated plea; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Yarn v. State*, 305 Ga. 421, 426-427 (4) (826 SE2d 1) (2019) (citation and punctuation omitted).

Here, Mohr has not shown prejudice. As a threshold matter, it is not clear from the record either that the plea offer was still on the table after the hearing on the motion to suppress or that the trial court would have accepted the plea. Furthermore, to the extent the plea offer remained viable after the suppression hearing, Mohr rejected that plea with knowledge that the surveillance video would be shown to the jury. Given Mohr's willingness to proceed to trial in the face of such damning evidence, the trial court was not required to believe his post-conviction claim that he would have accepted the plea deal had he been aware of other evidentiary limits in the case. See *Dresbach v. State*, 308 Ga. 423, 426 (2) (841 SE2d 714) (2020)

12

(credible evidence is required to establish a reasonable probability that the defendant would have accepted a plea deal).

(c) Finally, Mohr argues that his trial counsel was ineffective in failing to challenge the execution of the search warrant under OCGA § 17-5-25. Mohr suggests that, had his attorney sought suppression of the surveillance video on this basis, the evidence would have been suppressed.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Calhoun v. State*, 327 Ga. App. 683, 686 (2) (a) (761 SE2d 91) (2014) (citation and punctuation omitted). OCGA § 17-5-25 provides that a search warrant shall be executed within ten days and that "[a]ny search warrant not executed within ten days from the time of issuance shall be void and shall be returned to the court of the judicial officer issuing the same as 'not executed.'" Although a trial court is authorized to suppress evidence seized if a warrant is not executed within ten days, see *State v. Hillman*, 146 Ga. App. 418, 418 (246 SE2d 434) (1978), we are unaware of any case holding that a trial court *must* suppress such evidence. To the contrary, "[a] violation of the statutory warrant requirements does not necessarily authorize

13

evidence suppression." *State v. Stafford*, 277 Ga. App. 852, 853 (627 SE2d 802) (2006). Under OCGA § 17-5-31, "[n]o search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused."

Here, Mohr's substantial rights were not affected. At the time the warrant was issued, the authorities already had lawful possession of the recording equipment, and it appears that Mohr gave his password to the investigator voluntarily. The authorities also obtained a search warrant for the contents of the recording equipment. The fact that authorities waited 13 days from the issuance of the warrant to access the contents of the recording equipment was, at most, a technical violation. See, e. g., *Nelson v. State*, 312 Ga. 375 (863 SE2d 61) (2021) (delay of over two years between the seizure of electronic devices and the search of those devices did not violate the Fourth Amendment). Under these circumstances, we do not believe Mohr was entitled to suppression of the evidence, and he has thus failed to establish the prejudice necessary for a claim of ineffective assistance. See *Calhoun*, 327 Ga. App. at 686-687 (2) (a).

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur*.

14